UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY LEE, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>     -v-<br><br>BUTH-NA-BODHAIGE, INC.,<br>a Delaware corporation,<br>d/b/a THE BODY SHOP, and<br>DOES 1-10,<br><br>                    Defendants. | Case No. 1:16-cv-01104<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION AND FACTA BACKGROUND

1.      Plaintiff Henry Lee ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Buth-Na-Bodhaige, Inc. d/b/a/ The Body Shop LLC ("Defendant") to secure redress for violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.      As found by Congress, a common *modus operandi* for those seeking to commit fraud or identity theft is to obtain credit card receipts and use the information published on the document.

3.      The publication of more than the last five digits of a credit card or debit card number or an expiration date on customer receipts increases the possibility of identity theft or fraud.

4.      Any person who obtains a receipt containing more than the last five digits of a credit card or debit card number or the expiration date can use that data in an attempt to fool the actual cardholder, or other potential information sources, into disclosing additional confidential financial

information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to steal additional confidential financial information.

5.     The National Law Journal recently reported that "about 15 million U.S. residents have their identities used fraudulently each year, with resulting financial losses close to $50 billion." "Happy Holidays – 'Tis the Season for Identity Theft" p. 18, The National Law Journal, December 7, 2015.

6.     In 2014, the Federal Trade Commission's Consumer Sentinel Network reported over 2.5 million complaints, of which 60 percent were related to fraud and 13 percent were related to identity theft.  With over 1.5 million fraud-related complaints, the FTC reported customers paying over $1.7 billion as a result of those fraud complaints.

7.     To curb this means of identity theft, Congress passed FACTA and prohibited merchants, such as Defendant, who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

8.     The operative provision of FACTA, codified at 15 U.S.C. §1681c(g)(1), provides that:

> No person that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5 digits of the card number or the expiration date** upon any receipt provided to the cardholder at the point of sale or transaction.  (emphasis added).

9.     Section 1681c(g) is "not ambiguous."  It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date."  *Pirian v. In-N-Out Burgers,* 06-1251, 2007 WL 1040864, *3 (C.D. Cal. Apr. 5, 2007); *accord*, *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782 (N.D. Ill. 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960 (N.D. Ill. 2007); *Follman v. Village Squire, Inc.*, 542

F. Supp. 2d 816 (N.D. Ill. 2007); *Korman v. Walking Co.,* 503 F. Supp. 2d 755 (E.D. Pa. 2007); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226 (D. Nev. 2007); *see also In re The TJX Companies, Inc.*, MDL No. 1853., No. 07-md-1853-KHV, 2008 WL 2020375, at *1 (D. Kan. May 9, 2008) (citing 15 U.S.C. § 1681c(g)(1)) ("FACTA prohibits retailers who accept credit or debit cards from 'print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.'").

10. Congress then gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

11. With respect to point of sale machines that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

12. With respect to point of sale machines that were in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 1, 2006.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14. Venue in this district is proper because Defendant conducts business within this district and the transaction giving rise to this lawsuit occurred within this district. In particular, as of December 7, 2015, Defendant operated a store at 420 Lexington Avenue, New York, New York.

## PARTIES

15. Plaintiff, Henry Lee, is a consumer as defined in 15 U.S.C. § 1681a(c).

16. Defendant, Buth-Na-Bodhaige, Inc. d/b/a The Body Shop, is a Delaware corporation with a principal place of business located at 5036 One World Way, Wake Forest, NC 27587.  Defendant operates hundreds of stores throughout the United States.

17. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

18. Defendants Does 1-10 are individual officers, directors, employees and agents of defendant who authorized, directed or participated in the violations of law complained of. Collectively, they are referred to as "Defendant" in this Complaint.

## FACTS

19. In transacting its business, Defendant uses one or more cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

20. Plaintiff has a bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

21. On December 7, 2015, Plaintiff used his American Express credit card to make a purchase at Defendant's location at 420 Lexington Avenue, New York, New York.

22. At the completion of his purchase, Plaintiff was given a computer-generated cash register receipt that published more than the last five (5) digits of Plaintiff's credit card number. In fact, the customer copy published the first six and the last four digits of Plaintiff's credit card for a total of <u>ten</u> digits of Plaintiff's credit card.

23. Defendant's wanton violation is tantamount to turning over Plaintiff's physical credit card to an identity thief.  Multiply this violation by thousands, hundreds of thousands or millions of times and the Defendant has created a criminal bonanza for identity thieves throughout the United States.

**DEFENDANT'S WILLFUL VIOLATION OF FACTA'S REQUIREMENTS**

24. Defendant accepts Visa, MasterCard, or Discover debit or credit cards, and/or American Express credit cards in the course of transacting business with persons who make purchases at Defendant's retail locations throughout the United States.

25. Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) are keenly aware of the importance of truncating expiration dates as required under FACTA. Accordingly, they informed their merchants, including Defendant, for years about FACTA and what a company must do to be compliant.

26. Visa, MasterCard, the PCI Security Standards Council (a consortium founded by Visa, MasterCard, Discover, and American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed merchants, such as Defendant, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

27. Visa, MasterCard, American Express, and Discover by contract require Defendant to be FACTA compliant.

28. Visa explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

29. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete

5

compliance by July 1, 2006, five months ahead of the statutory deadline.  Defendant would have received this and subsequent Rules from Visa.

30. MasterCard explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

31. American Express explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

32. Discover explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

33. A bulletin dated June 14, 2006 issued by AllianceData, another processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print **more** than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale transaction."  It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

34. Defendant is a wholly-owned subsidiary of The Body Shop International plc, which in turn is owned by L'Oréal S.A.  L'Oréal S.A. is a publicly-traded company whose shares are quoted and traded on the Paris Stock Exchange (Euronext Paris).

35. Defendant is a member of or receives information from the National Retail Federation. Defendant's employees are members of or receive information from the National Retail Federation.

36. The National Retail Federation provided Defendant and its parent companies guidance on FACTA's truncation requirements.

37. Through the National Retail Federation, credit card merchants and other methods of notification, Defendant was aware that the purpose of FACTA is to prevent theft of credit and debit card numbers and the exposure to consumers for Defendant's failure to comply.

38. Similarly, on January 10, 2007, the National Retail Federation sent a memo to the general counsels of its members warning that failure to suppress "credit card expiration dates or anything beyond the last five digits of a customer's credit card number on the copy of the receipt provided to the customer" was likely to result in a lawsuit.

39. At the time of the FACTA violations identified in this Complaint and before, Defendant knew of its obligations under FACTA and the importance of the truncation requirements.

40. Not only was Defendant repeatedly made aware of its obligations under FACTA, but it was expressly made aware through regular bulletins, publications, and memos from retail associations, merchant banking associations, and the credit card companies that failure to comply with the truncation requirements was illegal, as it could subject its customers, such as Plaintiff, to identity theft.

41. Furthermore, many insurance companies providing liability insurance to businesses like Defendant specifically negotiate exclusions to coverage for FACTA violations.

42. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.

43. FACTA compliance requires either dedication of internal resources or payment to third-party vendors to bring a company into compliance with FACTA.

44. Defendant could readily have done the same, but either recklessly failed to review their own FACTA compliance or intentionally opted to save money by not bringing its stores into compliance.

45. On information and belief, Defendant has failed to comply with FACTA's truncations requirements at other retail locations throughout the class period.

46. Despite knowledge of FACTA's requirements, contractual requirements from credit card issuers that Defendant must be FACTA compliant, and notifications from credit card issuers and the federal government, Defendant continues to willfully disregard FACTA's requirements and continues to use cash registers or other machines or devices that print receipts in violation of FACTA after June 3, 2008.

47. Indeed, Defendant has a long history of willfully and/or recklessly disregarding and violating consumer protection statutes. For example, Defendant recently was sued for sending automated text messages to its customers, in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.*, and paid over $7 million to settle that matter before trial. Even after being sued for violating consumer protection statutes, Defendants still failed or refused to comply with FACTA.

## **VIOLATION ALLEGED**

48. Defendant violated 15 U.S.C. § 1681c(g)(1), which provides that:

> …**no person** that accepts credit cards or debit cards for the transaction of business **shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

> 15 U.S.C. § 1681c(g)(1) (emphasis added).

49. The FCRA, 15 U.S.C. § 1681n, further provides:

> § 1681n. Civil Liability for willful noncompliance
> (a) In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of - (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; ***
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…

50. Defendant knew of and ignored its legal duty to truncate requisite information from the Plaintiff's and the class members' credit or debit cards at the point of sale or, alternatively, Defendant failed to inquire at all about their duty to truncate as required by the statute.

51. Defendant received information on multiple occasions regarding the truncation requirements and its importance for prevention of identity theft and fraud.

52. Notwithstanding all of the publicity and the Defendant's knowledge of the FACTA's requirements, Defendant willfully failed to comply with FACTA thereby putting millions of customers' financial identities at risk.

## CLASS ALLEGATIONS OF THE VIOLATION ALLEGED

53. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

54. The proposed class is defined as:

> All persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at any of Defendant's locations where Defendant provided an electronically-printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card or more than the last five digits of that person's credit or debit card for a time period

beginning five years prior to the filing of this lawsuit until the date the class is certified.

55. The class is so numerous that joinder of all individual members in one action would be impracticable.

56. On information and belief, Defendant was providing improperly truncated receipts to their customers at all of their locations.

57. There are well over 100 persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at Defendant's business locations where Defendant provided an electronically printed receipt at the point of sale or transaction that violated FACTA's truncation requirements for a time period beginning from a time 5 years prior to the filing of this lawsuit.

58. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

    a. Whether Defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

    b. Whether Defendant thereby violated FACTA; and

    c. Whether Defendant's conduct was willful.

59. Plaintiff will fairly and adequately represent the class members.

60. Plaintiff has no interests that conflict with the interests of the class members.

61. Plaintiff has retained experienced counsel in consumer class action matters.

62. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

WHEREFORE, Plaintiff requests this Honorable Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against Defendant for:

    a.    Statutory damages not less than $100 nor more than $1,000, per violation;

    b.    Attorney's fees and costs; and

    c.    Such other and further relief as the Court may deem just and proper, including pre-and post-judgment interest and punitive damages.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury on all issues so triable.

Dated:  New York, New York
        February 12, 2016

                                      Respectfully submitted,

                                      HUR & LASH, LLP

                                      By: /s/ Robert L. Lash
                                          Robert L. Lash
                                      *Attorneys for Plaintiff*
                                      390 Fifth Avenue, Suite 900
                                      New York, NY 10018
                                      T: (212) 468-5590
                                      F: (212) 468-5599
                                      rlash@hlnylaw.com