UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HENRY LEE,

            Plaintiff,

     -v-

BUTH-NA-BODHAIGE, INC.,

            Defendant.

1:16-cv-01104-LTS

---

BUTH-NA-BODHAIGE, INC.,

            Third-Party Plaintiff,

     -v-

VERIFONE, INC.,

            Third-Party Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT VERIFONE, INC.'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

John G. Papianou
Montgomery, McCracken,
  Walker & Rhoads, LLP
437 Madison Avenue
New York, NY  10022
jpapianou@mmwr.com

December 12, 2016

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

    I.    THE LITIGATION ................................................................................................ 2

        A.    The Plaintiff's Complaint ........................................................................ 2

        B.    The Third-Party Complaint ..................................................................... 2

    II.    AGREEMENT BETWEEN THE BODY SHOP AND VERIFONE .................... 3

        A.    The Scope Of Services Does Not Include Printing Receipts ................... 3

        B.    The Warranty Provisions Contradict The Body Shop's Claims ............... 4

        C.    The Merchant Agreement Had An Integration Clause ............................. 5

    III.    THE BODY SHOP'S CLAIMS AGAINST VERIFONE ................................. 5

ARGUMENT ......................................................................................................................... 6

    I.    LEGAL STANDARD ........................................................................................... 6

    II.    THE BODY SHOP'S CONTRACT CLAIMS (COUNTS I & II) FAIL BECAUSE VERIFONE HAS NO OBLIGATION TO ENSURE CUSTOMER RECEIPTS COMPLY WITH FACTA ......................................... 7

    III.    THE ECONOMIC LOSS RULE BARS THE BODY SHOP'S TORT CLAIMS (COUNTS III, IV & V) ........................................................................ 10

    IV.    THE BODY SHOP HAS FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS TORT CLAIMS (COUNTS III, IV & V) ........................... 13

        A.    The Complaint Has Failed To Plead A Misrepresentation Sufficient To State A Claim For Fraud (Count IV) And Negligent Misrepresentation (Count V) Under Rule 8(a) ......................................... 14

        B.    The Body Shop's Fraud Claim (Count IV) Does Not Satisfy The Heightened Pleading Standard Under Rule 9(b) ...................................... 16

        C.    The Complaint Has Failed To Plead Facts Sufficient To Support Its Fraud By Concealment Claim (Count III) Under Rule 9(b) .................... 17

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*,
 731 F.2d 112 (2d Cir.1984)...................................................................................17

*Aas v. Superior Court*,
 24 Cal. 4th 627 (2000), *superseded by statute on other grounds as recognized
 in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003) ...............................11

*Achcraft v. Iqbal*,
 566 U.S. 662 (2009)...............................................................................6, 7, 15

*Anderson v. Nelson*,
 No. 10-1929, 2010 WL 4884670 (D. Minn. Nov. 4, 2010), *report and
 recommendation adopted sub nom. Anderson v. Action Sys., Inc.*, No. 10-
 1929, 2010 WL 4877818 (D. Minn. Nov. 23, 2010) ...........................................8

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
 158 Cal. App. 4th 226 (App. Ct. 2007)...................................................................14

*Astrium S.A.S. v. TRW, Inc.*,
 197 F. Appx 575 (9th Cir. 2006)...........................................................................12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................................6

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
 162 Cal. App. 4th 858 (Ct. App. 2008)...................................................................17

*Broder v. Cablevision Systems Corp.*,
 418 F.3d 187 (2d Cir. 2005)...............................................................................7, 9

*Brown v. N.Y.C. Hous. Auth.*,
 No. 05-cv-10332, 2006 WL 1378599 (S.D.N.Y. May 17, 2006) ............................7

*In re Carter–Wallace, Inc., Sec. Litig.*,
 220 F.3d 36 (2d Cir.2000)...................................................................................19

*Catalano v. BMW of North America, LLC*,
 167 F. Supp. 3d 540 (S.D.N.Y. 2016)...............................................................19, 20

*East Point Systems, Inc. v. Steven Maxim, S2K, Inc.*,
 133 F. Supp. 3d 430 (D. Conn. 2015) ...................................................................15

# TABLE OF CONTENTS

**Page**

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).................................................................15

*Elias v. Hewlett Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) .................................................15

*F.D.I.C. v. CoreLogic Valuation Servs., LLC*, No. SA CV 11–0704, 2011 WL
   5554324 (C.D. Cal. Nov. 14, 2011) .....................................................12

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,
   868 F. Supp. 2d 983 (E.D. Cal. 2012)...................................................13

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)....................................................................7

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
   880 F. Supp. 2d 1029 (N.D. Cal. 2012) ...........................................11, 12

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir.2001)....................................................................19

*Kaufman v. Cohen*,
   307 A.D.2d 113 (N.Y. App. Div. 2003) ...............................................14

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)...................................................................17

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ....................................................................7

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)...................................................................16

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*,
   629 F. Supp. 2d 1135 (E.D. Cal. 2009)..................................................12

*Oracle USA, Inc. v. XL Global Servs., Inc.*, No. C 09–00537 MHP, 2009 WL
   2084154 (N.D. Cal. Jul. 13, 2009) ........................................................13

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F.Supp.2d 1081 (N.D. Cal. 2007) ...................................................10

*Pasadena Live, LLC v. City of Pasadena*,
   114 Cal. App. 4th 1089 (2004) ..............................................................10

# TABLE OF CONTENTS

**Page**

*Poindexter v. EMI Record Grp. Inc.*,
   No. 11-cv-559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012)................................................7

*R Power Biofuels, LLC v. Chemex LLC*,
   No. 16-cv-00716, 2016 WL 6663002 (Nov. 11, 2016) ........................................................11

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008)...................................................................................................6

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746, 2009 WL 165931 (N.D. Cal. June 5, 2009).....................................................15

*Stelmachers v. Verifone Systems, Inc.*,
   No. 5:14-cv-04912, 2015 WL 8027902 (N.D. Cal. Dec. 7, 2015) ..........................................8

*Subaru Distributors Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005)...........................................................................................3, 7, 9

*Taragan v. Nissan North America, Inc.*,
   No. C 09–3660 S, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ....................................17, 18

*Tuosto v. Phillip Morris USA, Inc.*,
   No. 05 Civ. 9384, 2007 WL 2398507 (S.D.N.Y. August 21, 2007).......................................16

*Vavak v. Abbott Laboratories, Inc.*,
   SACV 10–1995, 2011 WL 10550065 (C.D. Cal. June 17, 2011)...........................................12

**Statutes**

15 U.S.C. § 1681c(g)(1)............................................................................................................2, 8

**Other Authorities**

Federal Rule of Civil Procedure 8(a) .............................................................................2, 14, 15

Federal Rule of Civil Procedure 9(b).................................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 7, 21

Third-Party Defendant VeriFone, Inc. ("Verifone") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Third-Party Complaint (the "Complaint") filed by Third-Party Plaintiff Buth-Na-Bodhaige, Inc. d/b/a The Body Shop ("The Body Shop").  For the reasons stated below, each count of the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and the fraud based counts also fail to comply with Federal Rule of Civil Procedure 9(b).

<u>**PRELIMINARY STATEMENT**</u>

The Body Shop's Complaint is an improper and futile attempt to shift its statutory responsibility to Verifone.  The Body Shop claims Verifone breached an agreement and committed various torts because Verifone failed to ensure that The Body Shop's customer receipts complied with the Fair and Accurate Credit Transactions Act ("FACTA").  But what The Body Shop fails to tell the Court—and what dooms The Body Shop's Complaint—is that the Point Service Merchant Agreement ("Merchant Agreement") that forms the basis for its breach-of-contract claims does not impose any obligation on Verifone to ensure that receipts printed on The Body Shop's cash registers comply with FACTA.  Nor does Verifone have an independent legal duty to ensure that The Body Shop complies with FACTA.   For these reasons alone, the Court should dismiss The Body Shop's Complaint.

In addition, the Court should dismiss The Body Shop's tort claims for the separate and independent reason that the economic loss rule bars them.  The economic loss rule precludes a party from recovering pure economic damages in tort for breach of duties that merely restate contractual obligations.  Because all of The Body Shop's tort claims are based on the premise that Verifone delivered a defective product and caused economic damages, the economic loss rule applies and bars all such claims.

Finally, The Body Shop's tort claims independently fail because it has not plead facts sufficient for such claims to survive under Federal Rule of Civil Procedure 8(a) or 9(b). Specifically, The Body Shop fails to allege any actual misrepresentation of fact by Verifone in connection with its fraud and negligent misrepresentation claims.  The Body Shop likewise fails to allege facts establishing that Verifone had a duty to disclose anything about how its software exported data that The Body Shop then used to print receipts that allegedly did not comply with FACTA or that Verifone acted with fraudulent intent in not doing so.

Accordingly, the Court should dismiss The Body Shop's Complaint in its entirety.

## FACTUAL BACKGROUND

### I.     THE LITIGATION

#### A.     The Plaintiff's Complaint

On February 12, 2016, Plaintiff Henry Lee ("Plaintiff Lee") filed a proposed class action complaint (the "Lee Complaint") against The Body Shop, alleging that it provided him with a "computer-generated cash register receipt" displaying the first six and the last four digits of his credit card number in violation of FACTA.  Lee Compl. ¶¶ 22, 48.  FACTA specifically provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681c(g)(1).  The Body Shop itself is a sophisticated international entity, owned by a publicly traded European company and a member of sophisticated trade groups.  Lee Compl. ¶¶ 34-39; The Body Shop Answer ¶¶ 34-39.

#### B.     The Third-Party Complaint

In response to Plaintiff Lee's allegations, The Body Shop filed a Third-Party Complaint against Verifone nearly a year later, alleging various contract and tort claims against

Verifone on the basis that Verifone was allegedly responsible for ensuring that The Body Shop's customer receipts complied with FACTA.   Compl. ¶¶ 1, 25-59.

## II.   AGREEMENT BETWEEN THE BODY SHOP AND VERIFONE

As alleged in the Complaint, on or about January 17, 2014, The Body Shop entered into a Point Service Merchant Agreement with Verifone (the "Merchant Agreement"). Compl. ¶ 8.  It is that agreement, *and only that agreement*, which sets forth the respective rights and responsibilities of the parties.  While The Body Shop repeatedly refers to and relies upon the Merchant Agreement in its Complaint (see ¶¶ 8, 12, 26-30, 32-39), it strategically elects not to attach it or disclose to the Court's attention the applicable provisions because those provisions defeat its claims against Verifone.[1]

### A.   The Scope Of Services Does Not Include Printing Receipts

Critically, the Complaint never alleges that the Merchant Agreement requires Verifone to print customer receipts in compliance with FACTA.  As explained below, the reason for this omission is that the Merchant Agreement imposes no such obligation on Verifone.  This explains why The Body Shop fails to attach the Merchant Agreement or point to any specific contract provision in alleging its claims.  Instead, it quotes a few general statements from unspecified "promotional materials," even though those statements fail to mention anything about FACTA.  Compl. ¶¶ 10-11.

The Merchant Agreement specifically provides that Verifone will supply The Body Shop with (1) hardware (specifically, debit and credit card readers);  (2) software (called

---

[1]   The Merchant Agreement is attached as Exhibit A to the Declaration of John G. Papianou.  The Court may consider the Merchant Agreement on this motion to dismiss because it is a document "upon which the complaint relies and which [is] integral to the complaint."  *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

"PAYware Connect"); and (3) a service package[2] to facilitate its payment processing. Attachment A, Merchant Agreement; Compl. ¶¶ 8, 12, 28.

Significantly, The Body Shop does not allege—and the Merchant Agreement does not provide—that Verifone is responsible for providing the Body Shop's point-of-sale system or devices (including the cash register that printed Plaintiff Lee's receipt) that format and print customer receipts from data exported from the Verifone system. *See* Attachment A, Merchant Agreement. Indeed, by its own admission, The Body Shop was able to alter its systems to print receipts that complied with FACTA without any assistance or involvement by Verifone or any modification of the Verifone system. Compl. ¶ 22.

### B.   The Warranty Provisions Contradict The Body Shop's Claims

The Merchant Agreement does not contain any warranty holding Verifone responsible for ensuring that The Body Shop's receipts comply with FACTA. Section 8 of the Merchant Agreement sets forth the only warranties Verifone made:

> Verifone warrants that … Verifone PAYware Connect is on the list of service providers that have been certified as comp[li]ant with the Payment Card Industry Data Security Standards ("PCI DSS") established by PCI SSC. Verifone shall seek revalidation of PAYware Connect with PCI SSC as required by PCI SSC during the term of this Agreement .… Verifone warrants that [it] … has obtained the Payment Card Industry PIN Transaction Security ("PCI PTS") approval for the Devices; and (ii) Verifone will not

---

[2] The Merchant Agreement sets forth the services that Verifone will make available to The Body Shop:  (a) a "Point Portal" that "[p]rovides administrative access to all [Verifone software] tools, reporting, configuration and rights management;" (b) "transaction routing to enable various transaction types … [and] online reporting;" (c) "[e]state [m]anagement [s]ervices" enabling The Body Shop to "remotely manage application updates to the field ….;" (d) "initial key injection of Verifone devices prior to shipment as well as remote key update[s] provided by Verifone … at [The Body Shop's] request;" (e) "encryption of the sensitive credit/debit card track data elements from [Verifone's debit and credit card reader] to the PAYware Connect gateway, at which point the data elements are decrypted and sent to the applicable processor;" (f) "initial configuration, shipment, and deployment of all Verifone equipment;" (g) "Help Desk Services;" (h) "Warranty and/or Repair" services; (i) "NFC payment acceptance for Google and ISIS enabled devices" (*i.e.*, ability to pay with a smart phone, *etc.*); (j) "Data Breach Insurance;" (k) "[o]ngoing maintenance related to EMV [(Europay, MasterCard and Visa)] specification changes and/or required recertifications"; (l) "Priority Exchange" services for replacing debit and credit card readers; (m) "PCI Support Services;" and (n) "Wireless Services." Attachment A, Merchant Agreement.

> ship a Device to Merchant where such Device has not received
> PCI-PTS approval from PCI SSC.

Merchant Agreement § 8(a)-(b).  No allegation is made that Verifone's software and devices lack

the certification and approval identified in this Section, nor could such an allegation be made.

Except for these warranties, Verifone expressly and conspicuously disclaims all other warranties

in the Merchant Agreement.

> Disclaimer.  EXCEPT FOR THE WARRANTIES SET FORTH
> ABOVE, THE POINT SERVICE IS PROVIDED "AS IS."
> VERIFONE DISCLAIMS ALL WARRANTIES, EXPRESS,
> IMPLIED OR STATUTORY, INCLUDING WITHOUT
> LIMITATION IMPLIED WARRANTIES OF
> MERCHANTABILITY AND FITNESS FOR A PARTICULAR
> PURPOSE AND NON-INFRINGEMENT OF THIRD PARTY
> RIGHTS …. VERIFONE DOES NOT WARRANT THAT THE
> POINT SERVICE WILL MEET THE REQUIREMENTS OF
> MERCHANT. VERIFONE SHALL NOT BE RESPONSIBLE
> FOR ANY SERVICE INTERRUPTIONS, INCLUDING,
> WITHOUT LIMITATION POWER OUTAGES, SYSTEM
> FAILURES OR OTHER INTERRUPTIONS. NO ADVICE OR
> INFORMATION OBTAINED BY MERCHANT FROM
> VERIFONE OR FROM ANY OTHER THIRD PARTY ABOUT
> THE POINT SERVICE SHALL CREATE ANY WARRANTY.

Merchant Agreement § 8(c) (emphasis added by underscore).

### C.   The Merchant Agreement Had An Integration Clause

The Merchant Agreement makes clear that it "constitutes the entire agreement

between Verifone and [The Body Shop] and supersedes all prior or contemporaneous

communications and proposals, whether electronic, oral or written, relating to the subject matter

hereof."  Merchant Agreement § 13.

## III.   THE BODY SHOP'S CLAIMS AGAINST VERIFONE

Contrary to the clear terms of the Merchant Agreement, The Body Shop now

seeks to impose upon Verifone a contractual obligation to comply with FACTA.  Specifically,

The Body Shop alleges five claims against Verifone in its Complaint: (1) breach of contract

based on the claim that Verifone "failed to do what the [Merchant] Agreement required it to do, including without limitation, the obligation to provide software that, among other things, properly truncated credit and debit card numbers" (Compl. ¶ 29) (Count I); (2) breach of the implied covenant of good faith and fair dealing based on the claim that "Verifone deprived The Body Shop of the benefits of a legally compliant, functioning payment processing system, which is what The Body Shop contracted with Verifone to provide" (Compl. ¶ 36) (Count II); (3) fraud by concealment in that "Verifone did not disclose that the defect in its software resulted in the first six and last four digits to be displayed in the receipt data" (Compl. ¶ 42) (Count III); (4) fraud based on "precontractual statements" that Verifone allegedly made to The Body Shop "tout[ing] itself as a global payments leader in electronic payment transactions, payment processing services, and value-added services at the point of sale" (Compl. ¶¶ 48, 51) (Count IV); and (5) negligent misrepresentation based on the claim that Verifone "did not exercise reasonable care in insuring the accuracy of its precontractual statements to The Body Shop," thereby "expos[ing] The Body Shop to potential FACTA liability…." Third-Party Compl. ¶¶ 58-59 (Count V).

For the reasons set forth below, each of these claims fails as a matter of law.

## ARGUMENT

## I.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Achcraft v. Iqbal*, 556 U.S. 662, 678 (2009).  In making the plausibility determination, a court must accept the

factual allegations in the complaint as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Additionally, in deciding a Rule 12(b)(6) motion, the district court may rely upon "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). It is especially appropriate to apply this rule when "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (emphasis added). Notable for purposes of the motion here, if materials that are integral to the complaint are inconsistent with the allegations in the pleadings, those materials trump the allegations in the pleadings.[3]  Accordingly, it is appropriate here for the Court to consider the Merchant Agreement in its entirety despite The Body Shop's attempt to conceal and escape it.

## II.    THE BODY SHOP'S CONTRACT CLAIMS (COUNTS I & II) FAIL BECAUSE VERIFONE HAS NO OBLIGATION TO ENSURE CUSTOMER RECEIPTS COMPLY WITH FACTA

The Complaint has alleged breach of contract against Verifone on the basis that Verifone "failed to do what the [Merchant] Agreement required it to do, including without

---

[3]  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Insofar as the complaint relies on the terms of [the] customer agreement, therefore, we need not accept its description of those terms, but may look to the agreement itself."); *Poindexter v. EMI Record Grp. Inc.*, No. 11-cv-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *Brown v. N.Y.C. Hous. Auth.*, No. 05-cv-10332, 2006 WL 1378599, at *1 (S.D.N.Y. May 17, 2006) ("[W]here allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint.").

limitation, the obligation to provide software that, among other things, properly truncated credit and debit card numbers." Compl. ¶ 29. The Complaint also alleges that Verifone breached the implied covenant of good faith and fair dealing by "depriv[ing The Body Shop] of the benefits of the bargain," specifically a "legally compliant functioning payment processing system." Compl. ¶¶ 35-36. As explained below, these claims fail because the Merchant Agreement imposes no obligation on Verifone to ensure the Body Shop's receipts comply with FACTA.

As an initial matter, FACTA applies to "person[s] that ***accept[]*** credit cards or debit cards ***for the transaction of business***" and issue receipts to customers. 15 U.S.C. § 1681c(g)(1) (emphasis added). By its terms, FACTA applies to merchants and not service providers, like Verifone, that provide components of payment processing systems to those merchants. Accordingly, the Complaint against Verifone makes no claim that Verifone violated FACTA because it cannot. Therefore, unless the Merchant Agreement imposes a contractual duty on Verifone to ensure customer receipts' compliance with FATCA, Verifone has no such duty or obligation.[4] Here, it is telling that The Body Shop omits the Merchant Agreement in its entirety and cannot point to any provision in the Merchant Agreement requiring Verifone to ensure its compliance with FACTA. As set forth below, this is because the Merchant Agreement imposes no such duty on Verifone.

The Merchant Agreement makes only two warranties to The Body Shop: (1) that "Verifone PAYware Connect is on the list of service providers that have been certified as

---

[4] *See Stelmachers v. Verifone Systems, Inc.,* No. 5:14-cv-04912, 2015 WL 8027902, at *3 (N.D. Cal. Dec. 7, 2015) (dismissing consumer's FACTA claims against Verifone, finding that plaintiff "does not provide factual allegations as to how VeriFone served as a merchant during the transaction at issue . . . . Instead, it appears VeriFone only manufactured the machine that processed Plaintiff's credit card payment"); *Anderson v. Nelson*, No. 10-1929, 2010 WL 4884670, at *4 n.4 (D. Minn. Nov. 4, 2010), *report and recommendation adopted sub nom. Anderson v. Action Sys., Inc.*, No. 10-1929, 2010 WL 4877818 (D. Minn. Nov. 23, 2010) (dismissing third-party claims brought by merchant against point-of-sale system manufacturer based on merchant's alleged FACTA violations, noting "[t]he plain language of the FACTA states that FACTA applies only to persons who accept credit and debit cards for the transaction of business . . . .[The manufacturer] is not, therefore, a covered entity.").

comp[li]ant with the Payment Card Industry Data Security Standards ("PCI DSS") established by PCI SSC"; and (2) that Verifone "has obtained the Payment Card Industry PIN Transaction Security ("PCI PTS") approval for the Devices" provided to The Body Shop.   Merchant Agreement §§ 8(a) and (b).   It is undisputed that those certification/approval warranties were met, and the Complaint does not allege otherwise.

Except for those warranties, the Merchant Agreement explicitly and in ALL CAPS provides that the services are provided "AS IS" and disclaims "ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. . . . " Merchant Agreement § 8(c).   The Merchant Agreement also makes clear that "NO ADVICE OR INFORMATION OBTAINED BY MERCHANT FROM VERIFONE OR FROM ANY OTHER THIRD PARTY ABOUT THE POINT SERVICE SHALL CREATE ANY WARRANTY."   *Id.*   It further contains an integration clause stating that the Merchant Agreement "constitutes the entire agreement between Verifone and [The Body Shop] and supersedes all prior or contemporaneous communications and proposals."   Merchant Agreement § 13.

In short, contrary to The Body Shop's conclusory allegation in support of its breach-of-contract claim, the Merchant Agreement imposes no obligation to "provide [The Body Shop with] software that . . . properly truncated credit and debit card numbers."   Compl. ¶ 29.   In fact, such warranties are disclaimed.   Because the Merchant Agreement contradicts The Body Shop's allegation that Verifone had such a contractual obligation, The Body Shop has failed to allege a plausible breach-of-contract claim.[5]

---

[5] *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (finding contract did not support claims for breach of contract and the implied covenant of good faith or fair dealing); *Subaru Distributors Corp. v.*

Similarly, there is no breach of any implied covenant of good faith and fair dealing.  Contrary to the Complaint, Verifone ensuring compliance with FACTA was not a "benefit" that The Body Shop bargained for.  Compl. ¶¶ 35-36.  Rather, it is a benefit that was disclaimed on the face of the Merchant Agreement.  While California law[6] recognizes an implied covenant of good faith and fair dealing in contracts, the California appeals court has also made clear that the covenant is "limited to assuring compliance with the *express terms* of the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (emphasis in original) (internal quotations and citations omitted).  It "cannot be extended to create obligations not contemplated by the contract" (*id.)*, which is exactly what The Body Shop's Complaint seeks to do.

Thus, because the express terms of the Merchant Agreement make clear that Verifone undertook no contractual obligation for ensuring The Body Shop's compliance with FACTA, both of the contract claims in the Complaint should be dismissed.

## III.     THE ECONOMIC LOSS RULE BARS THE BODY SHOP'S TORT CLAIMS (COUNTS III, IV & V)

In addition to its contractual claims, The Body Shop asserts multiple tort claims—specifically for fraud by concealment, fraud and negligent misrepresentation—against Verifone arising from Verifone's alleged failure to ensure that The Body Shop's customer receipts complied with FACTA.  As discussed below, the economic loss rule bars them all.

---

*Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (upholding dismissal  of breach-of-contract claim finding that the contract did not impose the duty alleged by plaintiff); *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1086 (N.D. Cal. 2007) (granting motion to dismiss breach of contract claim, finding "[p]laintiffs have failed to allege the terms of the contract on which they base their claims for breach of contract, and what terms within those contracts defendants allegedly breached").

[6] As The Body Shop notes in Paragraph 26 of the Complaint, Merchant Agreement provides that it "will be governed by the laws of the State of California."  Merchant Agreement § 13.

Like most jurisdictions, California—the state whose laws govern the Merchant Agreement—has adopted the economic loss rule. That rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003) ("A person may not ordinarily recover in tort for breaches of duties that merely restate contractual obligations"). In particular, the economic loss rule "serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). California courts have held that the application of the economic loss rule is especially appropriate in cases, like this one, that involve transactions between sophisticated parties so as to preserve the parties' agreed-upon risk allocations. *See R Power Biofuels, LLC v. Chemex LLC*, No. 16-cv-00716, 2016 WL 6663002, at *9 (N.D. Cal. Nov. 11, 2016) (applying economic loss rule to plaintiff's tort claims, noting that "when parties have engaged in an arms-length business transaction, California courts have been less willing to set aside the risk allocations negotiated by the parties").

The economic loss rule squarely applies here because The Body Shop's tort claims simply restate its alleged contract obligations. In particular, The Body Shop's first tort claim (fraud by concealment) is based upon nothing more than the fact that Verifone knew about but failed to disclose that its software did not "properly mask the credit or debit card information of The Body Shop's customers." Compl. ¶¶ 41, 42. Other than the knowledge element, this is the same conduct underlying The Body Shop's breach-of-contract claims—specifically that Verifone failed "to provide software that . . . properly truncated credit and debit card numbers." Compl. ¶ 29. The Body Shop similarly bases its second and third tort claims (fraud and negligent

misrepresentation) upon Verifone's "deficient [contractual] performance" in delivering software that truncated credit card numbers.  Compl. ¶¶ 50, 57.  However, for these claims, The Body Shop makes the additional allegation that Verifone fraudulently and/or negligently made false statements about its "familiarity and compliance with a complex regulatory environment" in unidentified promotional materials.  Compl. ¶¶ 47-51, 54-58.  The Body Shop claims that it relied upon such statements in entering into the Merchant Agreement.  Compl. ¶¶ 52, 59.  These allegations are a blatant attempt to evade the risk allocations (*i.e.*, warranty limits and disclaimers) made by the sophisticated parties in their contract.  They do not save The Body Shop's tort claims from application of the economic loss rule.

First, while the California Supreme Court has recognized some fraud exceptions to the economic loss rule, courts have dismissed both fraud and negligent misrepresentation claims in cases where, as here, such claims "consist of nothing more than [the defendant's] alleged failure to make good on its contractual promises." *JMP Sec.,* 880 F. Supp. 2d at 1042-43 (finding fraud and negligent misrepresentation claims barred by the economic loss rule under California law).[7]

Second, courts have barred fraud claims under the California economic loss rule where, as is the case with this Complaint, "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.,* 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009); *Foster Poultry*

---

[7] *See also Astrium S.A.S. v. TRW, Inc.*, 197 F. Appx 575, 577 (9th Cir. 2006) (finding district court did not err in holding negligent misrepresentation and fraud claim to be barred by economic loss rule); *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1145-46 (E.D. Cal. 2009) (dismissing fraud claims based on pre- and post- contractual dealings as barred by economic loss rule because "the assurances allegedly made by the defendant related to its duty under the contract"); *F.D.I.C. v. CoreLogic Valuation Servs., LLC*, No. SA CV 11–0704, 2011 WL 5554324, at *5-6 (C.D. Cal. Nov. 14, 2011) (finding negligence claim barred by economic loss rule); *Vavak v. Abbott Laboratories, Inc.*, No. SA CV 10–1995, 2011 WL 10550065, at *5-6 (C.D. Cal. June 17, 2011) (finding negligent misrepresentation claim barred by the economic loss rule because "[w]here damages are purely economic, recovery may only be in contract").

*Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012) (dismissing fraud claims as barred by economic loss rule because plaintiffs sought the same economic losses under both its contract and tort claims).   Here, The Body Shop claims that Verifone's tortious conduct has exposed it to "potential FACTA liability" and caused it to "incur significant litigation expenses" in defending the underlying actions.   *See* Compl. ¶¶ 45, 52, 59.   These are the exact same damages that The Body Shop alleges in connection with its breach-of-contract claims.   Compl. ¶¶ 30, 38.

As a California federal court recognized, "[v]irtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations."   *Oracle USA, Inc. v. XL Global Servs., Inc.*, No. C 09–00537 MHP, 2009 WL 2084154, at *7 (N.D. Cal. Jul. 13, 2009) (barring fraud claims under economic loss rule).   "To allow fraud claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law."   *Id.*

Accordingly, because The Body Shop's tort claims simply restate its contract claims, the economic loss rule applies and bars The Body Shop from pursuing such claims.

## IV.   THE BODY SHOP HAS FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS TORT CLAIMS (COUNTS III, IV & V)

Even if The Body Shop's tort claims were not barred by the economic loss rule (which they are), The Body Shop's tort claims independently fail because The Body Shop has not alleged facts sufficient to support such claims.[8]

---

[8]   Because California law governs the Merchant Agreement, California law also applies to The Body Shop's tort claims.   However, even if New York law applied, the same result would be reached.

A.    **The Body Shop Fails To Plead A Misrepresentation Sufficient To State A Claim For Fraud (Count IV) And Negligent Misrepresentation (Count V) Under Rule 8(a)**

With respect to its fraud and negligent misrepresentation claims, The Body Shop's Complaint fails to satisfy Federal Rule of Civil Procedure 8(a) because it does not allege any misrepresentation of fact that would give rise to tort liability.

To state a claim for fraud and negligent misrepresentation, the plaintiff's allegations must establish (1) the misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true (or knowledge of falsity if alleging fraud], (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).[9]

In support of its fraud and negligent misrepresentation claims, The Body Shop alleges that Verifone made the following false statements in certain unidentified "promotional materials":  (1) "75% of Top 200 U.S. Retailers use Verifone payment systems;" (2) "Verifone has more than 20M customers in over 110 countries;" (3) "Verifone Point is a comprehensive solution designed to help your merchants simplify payments . . . improve payment security and reduce PCI scope in the face of increasing cost complexity, and compliance requirements for payment related technologies;" and (4) "Regulatory changes and payment mandates require attention, decision, and action – now!"  Compl. ¶¶ 47-51, 54-58.

The Body Shop fails to explain how *any* of these statements constituted a fraudulent or negligent misstatement of fact relating to its claims here.  Indeed, nowhere in these

---

[9]  The elements of fraudulent and negligent misrepresentation are the same under New York and California law.  *See Kaufman v. Cohen,* 307 A.D.2d 113, 119 (N.Y. App. Div. 2003) ("To state a cause of action for fraudulent misrepresentation, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.") (internal citations omitted).

statements does Verifone refer to FACTA or even to printing receipts.  Moreover, these are generalized statements about Verifone's expertise and capabilities, which courts have consistently held is insufficient to state a claim for fraud or negligent misrepresentation.  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (dismissing securities fraud claims on basis that "JPMC's statements [regarding its highly disciplined risk management and its standard-setting reputation for integrity] were merely generalizations regarding JPMC's business practices.").[10]  Further, even assuming that such statements were actionable and contained a misrepresentation relevant to FACTA, "a representation that one is capable of doing something is not false simply because the speaker later fails to execute."  *East Point Systems, Inc. v. Steven Maxim, S2K, Inc.*, 133 F. Supp. 3d 430, 438-39 (D. Conn. 2015) (dismissing fraud claim based on alleged misrepresentation that defendant "possessed the capability of providing a computer software program that could satisfy the needs" of the plaintiff).  Finally, even if purported representation about FACTA compliance had been made, they were not false at the time they were made.   Rather, according to The Body Shop, the alleged "defect" in Verifone's software did not occur until at least months later during the installation process.  Compl. ¶¶ 10-11, 13-14.

Accordingly, the Complaint simply is not plausible on its face.  The allegations do not allow the court "to draw the reasonable inference" that Verifone made a negligent or fraudulent misstatement of fact as required under Rule 8(a), and thus The Body Shop's fraud and negligent misrepresentation claims should be dismissed.  *Iqbal*, 556 U.S. at 678.

---

[10] *See also Elias v. Hewlett Packard Co.*, 950 F. Supp. 2d. 1123, 1133 (N.D. Cal. 2013) (finding that defendant's "generalized advertisements that a computer is 'ultra-reliable' or 'packed with power'" constitute "non-actionable" puffery); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *10-12 (N.D. Cal. June 5, 2009) (dismissing fraudulent and negligent misrepresentation claim because manufacturer's representations that beds were "maintenance-free" and provided the "perfect night's sleep" were not actionable misrepresentations).

**B.     The Body Shop's Fraud Claim (Count IV) Does Not Satisfy The Heightened Pleading Standard Under Rule 9(b)**

The Body Shop's fraud claim also fails because it does not satisfy the heightened pleading requirement under Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) requires that a plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." The Second Circuit has held that, to satisfy this standard, the plaintiff "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (affirming dismissal of fraud claims for failure to satisfy pleading requirements of Fed. R. Civ. P. 9(b)).

The Body Shop's allegations fall far short of satisfying Rule 9(b). As previously discussed, The Body Shop's fraud claim is based upon a handful of general statements contained in unidentified promotional materials that Verifone allegedly provided to The Body Shop before execution of the Merchant Agreement. Compl. ¶¶ 47-51. In addition to failing to explain how any of the statements in the promotional materials were in fact fraudulent, The Body Shop also fails to describe with any specificity the circumstances in which it received these promotional materials. In particular, it provides utterly no detail about when, where, from whom, and to whom these materials were provided. The Body Shop does not even attach the unidentified promotional materials to the Complaint.

Because the allegations in the Complaint do not "specifically identify who made the statements, where and when the statements were made, nor how exactly the statements are fraudulent," The Body Shop has "failed to plead fraud with the specificity demanded by Rule 9(b)." *Tuosto v. Phillip Morris USA, Inc.*, No. 05 Civ. 9384, 2007 WL 2398507, at *9 (S.D.N.Y.

16

August 21, 2007) (dismissing common law fraud claims under Rule 9(b)). As such, The Body Shop's fraud claim should be dismissed.

### C.  The Complaint Has Failed To Plead Facts Sufficient To Support Its Fraud By Concealment Claim (Count III) Under Rule 9(b)

The Body Shop's fraud by concealment claim similarly fails to satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) for the two reasons discussed below.

First, The Body Shop has failed to plead specific facts demonstrating that Verifone had a duty to disclose the information at issue here. *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (holding that elements for fraud and concealment are: (1) concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent to defraud, i.e., to induce reliance; (4) actual, justifiable reliance; and (5) resulting damages).[11]

Under California law, the duty to disclose arises in only four instances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Taragan v. Nissan North America, Inc.*, No. C 09–3660 S, 2013 WL 3157918, at *6 (N.D. Cal. June 20, 2013) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)).[12]

---

[11] Again, New York law is similar. A fraudulent concealment claim also requires the plaintiff to allege that the defendant had a duty to disclose. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291-92 (2d Cir. 2006) (Under New York law, "a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information").

[12] A duty to disclose arises in even narrower situations under New York law. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984) ("[A] duty to disclose may arise in two situations: first,

The Complaint alleges in conclusory fashion that Verifone had a "duty to disclose the insufficient masking" of credit card receipts because of Verifone's "purported expertise in the services it contracted to provide and its greater knowledge and understanding of its own software."  Compl. ¶ 43.  This allegation by itself is insufficient to establish a duty to disclose. *See Taragan,* 2013 WL 3157918, at *6 (finding plaintiff's allegation that defendant was "in a superior position to know the facts about the quality and nature of" the product "too conclusory to establish [the defendant's] duty to disclose.").

While courts have recognized that a duty to disclose may exist when a defendant has exclusive or superior knowledge of material facts not readily available to the plaintiff, this situation clearly does not apply here.  *See id.*  Here, The Body Shop was the party that physically provided Plaintiff Lee with the receipt at issue in this litigation.  Lee Compl. ¶¶ 21-22.  Plainly, The Body Shop was printing receipts in its stores, and while The Body Shop had access to the printed receipts, Verifone did not.  As such, The Body Shop had equal—if not greater—access to the number of credit card digits printed on customer receipts and, therefore, cannot plausibly claim that Verifone had exclusive or superior knowledge of this fact.  Indeed, The Body Shop did not even need Verifone's assistance to change the number of digits that appeared on its receipts.  Compl. ¶ 22.  Accordingly, The Body Shop's allegations fall short of the particularity required to establish a duty to disclose.

Second, The Body Shop has also failed to allege particular facts showing that Verifone acted with fraudulent intent as required by Rule 9(b).

To satisfy Rule 9(b)'s heightened pleading requirements with respect to fraud claims, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent,

---

where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.").

which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016).  "To adequately plead motive for purposes of Rule 9(b), a plaintiff must allege 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Id.* (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir.2001).  Further, to establish recklessness, "the alleged reckless conduct must, at the least, be 'highly unreasonable' and represent an 'extreme departure from the standards of ordinary care.'"  *Id.* (quoting *In re Carter–Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir.2000)).

The Body Shop's Complaint utterly fails to meet this standard.  In particular, the Complaint does not allege any facts to show that Verifone had any "motive" to commit fraud or that it obtained any "concrete benefits" from the alleged fraud.  *See id.*  Rather, The Body Shop's fraudulent concealment claim appears to rest solely on the fact that Verifone became aware of an alleged defect in its software and failed to disclose it to The Body Shop.  Compl. ¶¶ 41-42.

In *Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540 (S.D.N.Y. 2016), the court found similar allegations insufficient to satisfy the pleading requirements of Rule 9(b).  In that case, the plaintiffs alleged that the defendant acted with fraudulent intent or recklessness "by alleging only BMW's knowledge of the [vehicle's] defects and that it did not disclose those defects to consumers."  *Id.* at 560.  The court found "allegations showing a defendant's actual knowledge of material information coupled with a failure to disclose do not meet [the Rule 9(b)] standard where the facts do not indicate a clear duty to disclose."  *Id.*  The Court further found that the defendant did not have a clear duty to disclose because the plaintiff

"offer[ed] no other allegations to show that BMW was in possession of any information relevant to the defects that was not also possessed by outside third parties." *Id.* at 561.  Accordingly, the court dismissed the plaintiff's fraudulent concealment claims as insufficient to satisfy Rule 9(b).

This analysis squarely applies to the facts of this case.  As set forth above, the Complaint does not properly and specifically allege Verifone's duty to disclose particularly since, as compared to The Body Shop, Verifone did not have superior access to the information printed on customer receipts.  Further, The Body Shop has not plead any facts to establish that Verifone acted with fraudulent intent other than that Verifone had knowledge of the defect and did not disclose it.  No "motive" is alleged, nor is any "concrete benefit" to Verifone from the imagined fraud.  Accordingly, The Body Shop has failed to plead facts giving rise to a strong inference of fraudulent intent as required under Rule 9(b) and, thus, its fraudulent concealment claim should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss The Body Shop's Third-Party Complaint Against Verifone in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).


Dated:    December 12, 2016               Respectfully submitted,

                                          MONTGOMERY, MCCRACKEN,
                                            WALKER & RHOADS, LLP



                                          By:        /s/John G. Papianou
                                                 _____
                                                 John G. Papianou
                                                 Montgomery, McCracken,
                                                   Walker & Rhoads, LLP
                                                 437 Madison Avenue
                                                 New York, NY  10022
                                                 jpapianou@mmwr.com
                                                 *Attorney for VeriFone, Inc.*